1

2

3

4
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
5
AT SEATTLE

6
GLOBAL ENTERPRISES, LLC,

7
                    Plaintiff,

8
        v.                                                    C13-1662 TSZ

9
MONTGOMERY PURDUE                                             ORDER
BLANKENSHIP & AUSTIN PLLC,
10
                    Defendant.
11

12

13
        THIS MATTER comes before the Court on Defendant's motion for summary

14
judgment, docket no. 31.  Having considered the motion, all materials filed in support of

and opposition thereto, and the arguments of counsel, the Court enters the following
15
Order.
16
        Plaintiff Global Enterprises, LLC ("Global") alleges that Defendant Montgomery
17
Purdue Blankenship & Austin ("MPBA") committed professional negligence and
18
breached fiduciary duties owed to Global.  MPBA represented Global in one case (the
19
"Richard Stabbert case"), in which MPBA succeeded in having all claims against Global
20
dismissed.  Global now seeks to hold MPBA responsible for the outcome of a completely
21
separate case.
22

23

ORDER - 1

1    Based upon MPBA's representation of Global in the Richard Stabbert case, Global

2    argues that MPBA also represented Global in a completely separate case (the "EVYA

3    case").  Global was represented in the EVYA case by its long term law firm, Bauer

4    Moynihan & Johnson ("BMJ") and MPBA appeared in the EVYA case on behalf of

5    Global's co-defendant, Maritime Management Services, Inc. ("MMSI").  Global also

6    argues that even if MPBA did not represent Global in EVYA, MPBA's fiduciary duties

7    to Global, arising from the Richard Stabbert case, required MPBA to intervene on

8    Global's behalf in the EVYA case.

9    The Court finds Global's arguments to be completely without merit.  The Court

10   has reviewed the entire record and concludes that no reasonable person could believe that

11   MPBA represented Global in the EVYA case.  Furthermore, the Court concludes that

12   MPBA's representation of Global in the Richard Stabbert case did not create a duty to

13   intervene in the EVYA case.  For the reasons explained below, the Court GRANTS

14   Defendant's motion for summary judgment.

15   **Background**

16   **A.  The EVYA Case**

17   The EVYA case arose from a commercial maritime charter between Global and

18   two Mexican companies, which provided for the use of Global's 270-foot vessel, the

19   Global Explorer.  Steuart Decl., docket no. 44, at ¶ 3.  Global hired MMSI to operate the

20   Global Explorer during the charter.  Id. at ¶ 4.  In May, 2006, Frank Steuart, Global's

21   manager, became aware of issues with the charter, including unsafe diving practices and

22   lack of insurance.  Id. at ¶ 6.  After several weeks of negotiation to cure the breaches of

23

the charter, Global eventually terminated the charter based on the Mexican companies' refusal to pay past due amounts.  Id. at ¶ 11.  Global took the vessel to Dos Bacos, Mexico, and then to Houston, Texas, where the Mexican companies' equipment was inventoried, packed and shipped back to Mexico.  Id. at ¶¶ 14-15.

In January, 2009, the Mexican companies sued Global, Steuart and his wife, MMSI, MMSI's owner Trevor Stabbert and his wife, and Global employee Perrusquia. Id. at ¶¶ 16, 18.  Steuart and his wife retained the firm of BMJ to represent Global and the Steuarts.  Id. at ¶ 16.  BMJ, concerned about a potential conflict of interest between Global and MMSI, referred MMSI to Mike Gossler of MPBA, and Stabbert hired Gossler to represent MMSI.  Id.at ¶¶ 18-19.  Steuart, on behalf of Global, agreed to fully indemnify MMSI and assumed full financial responsibility of the litigation, including paying MMSI's attorney fees.  Id. at ¶ 20.

In addition to representing MMSI, Gossler was asked by Steuart to represent Perrusquia, a Global employee.  Id. at ¶ 31.  Perrusquia and Steuart, on behalf of Global, signed an engagement letter with MPBA setting forth Gossler's representation.  Id. at ¶ 31; Neeleman Decl., docket no. 46, Ex. 27.  The engagement letter states that although Global was paying the fees, Perrusquia was the client.  Neeleman Decl. Ex. 27. Perrusquia was dismissed from the case because he was not properly served.  Steuart Decl. at ¶ 31.

Following a bench trial in October to November, 2010, the court concluded that Global had terminated the charter in bad faith, and entered judgment against Global for approximately $8.4 million.

ORDER - 3

### B.  The Richard Stabbert Case

Richard Stabbert, Trevor Stabbert's estranged step-father, worked for Global procuring charters.  Id. at ¶ 24.  In May, 2009, Richard Stabbert filed suit against Global and Steuart, claiming he was owed commissions from charters he procured, including a claim that he lost commissions due to Global's termination of the EVYA charter, and that he was sued in Mexico over Global's termination of the charter and forced to pay attorney fees to defend himself.  Id. at ¶¶ 25-26.  Richard Stabbert was represented in the case by the same attorneys who represented the plaintiffs in the EVYA case.  Id. at ¶ 25.  Steuart hired MPBA to represent Steuart and Global in the Richard Stabbert case, signing an engagement letter with MPBA in June, 2009.  Id. at ¶ 29; Neeleman Decl., Ex. 25. [1]

### C.  MPBA's Role in the EVYA Case

In the EVYA Case, BMJ represented Global Explorer, LLC, Global Enterprises, LLC, and the Steuarts.  See BMJ Notice of Appearance, docket no. 36-8, at 57.  MPBA represented MMSI and the Stabberts.  See MPBA Notice of Appearance, docket no. 36-8, at 60.  On February 9, 2009, all of these EVYA defendants, through their respective attorneys, signed a Joint Defense Agreement, agreeing to share information jointly without waiving any applicable privilege.  Agreement, Neeleman Decl., docket no. 46,

---

[1] No engagement letter exists relating to MPBA representing Global in the EVYA case.  Only two engagement letters were signed: (1) the letter setting forth MPBA's representation of Perrusquai in the EVYA case; and (2) the letter setting forth MPBA's representation of Global in the Richard Stabbert case.  The engagement letters clearly set forth who is being represented and the scope of such representation.  See Neeleman Decl. Exs. 25 and 27.  Steuart admitted that the letters were not confusing.  See, e.g., Steuart Dep. at 242:15-22.

ORDER - 4

1  Ex. 22.

2      Prior to trial, Steuart does not recall Gossler or MPBA ever suggesting it had any

3  role in the EVYA case except as attorneys for MMSI and Perrusquai.  Steuart Dep. at

4  209-210.  Furthermore, Steuart admits that he "didn't have a great deal of interaction,"

5  with Gossler "except specifically on the Stabbert related case, up until the trial."  Id. at

6  247:22-24.

7      In September, 2010, more than nineteen months after the EVYA case was filed,

8  and one month before trial, the defendants in the EVYA case met with the Tsongas trial

9  consulting firm (the "Tsongas meeting").  Steuart asserts that Gossler offered substantial

10  recommendations at the Tsongas meeting, id. at 217, but could not recall anything that

11  Gossler said or did at the meeting.  Id. at 221.  Nevertheless, this is the point where

12  Steuart contends he subjectively believed MPBA had become an attorney for Global in

13  the EVYA case.  Id. at 239:4-13; 248.  However, Steuart admits that Trevor Stabbert also

14  attended the meeting, that it was appropriate for Stabbert to have his attorney there, and

15  that Steuart did not believe anything was said in the meeting about Gossler's role

16  changing to something other than separate counsel for MMSI.  Id. at 221:24-222:22.

17      It is undisputed that at trial in the EVYA case, Matt Crane from BMJ appeared on

18  behalf of Steuart and Global, while Gossler of MPBA appeared on behalf of MMSI.[2]

19  Throughout trial, each attorney identified himself as representing his specific client.

20  Each attorney also questioned witnesses and gave closing argument on behalf of his

21  _____

22  [2] Trevor Stabbert and his wife were dismissed from the case prior to trial.

23

1  client, despite objection by counsel for plaintiffs in that case that only one attorney

2  should be allowed to question witnesses on behalf of all defendants.  See Trial Transcript,

3  Petrak Decl. Ex. D, docket no. 36-1, at pp. 46-48 of 95.  During trial, Steuart sent many

4  emails to Crane but never to Gossler.  Steuart Dep. at 251-252.

5      Steuart nevertheless asserts that he believed Gossler was representing Global's

6  interests in the EVYA case.  Steuart Decl. at ¶ 32.  Steuart based his belief on several

7  facts: (1) Global was ultimately paying all of the attorney fees MPBA billed to MMSI;

8  (2) Gossler attended and participated in the Tsongas meeting; (3) Steuart had a

9  conversation with Crane regarding whether Gossler should attend trial; (4) Gossler was

10 representing Global in the Richard Stabbert case while the EVYA case was ongoing; (5)

11 Steuart would have discussions with Crane and Gossler during breaks; (6) Steuart would

12 ask Gossler for his thoughts on things occurring during trial; and (7) Crane would ask

13 Gossler if he had any thoughts after examining witnesses.  Steuart Dep., docket no. 45-6,

14 at 215-218, 225-228.

15     In addition, Steuart generally claims that Gossler gave him advice regarding the

16 EVYA case and discussed both the EVYA case and the Richard Stabbert case with him.

17 Steuart Decl. at ¶¶ 32, 35.  Global provides two emails from Gossler to Steuart, both

18 dealing solely with the Richard Stabbert case, and mentioning EVYA only to the extent

19 there was a conflict between the trial dates.  See Neeleman Decl. Exs. 26, 28.  In another

20 email, Steuart requests an update on the Richard Stabbert case, and Gossler states that he

21 "filed motions to compel discovery in both cases **(on behalf of Trevor and MMSI in**

22 **the EVYA case and on behalf of Global Explorer in the Richard Stabbert case**)."

23

ORDER - 6

Neeleman Decl. Ex. 29 (emphasis added).

It is undisputed that after the EVYA trial concluded, Gossler was involved in settlement discussions on behalf of all defendants in the EVYA case because Crane was involved in another trial and unavailable.  There was no formal discussion or documentation regarding Gossler's increased role.  Steuart Decl. at ¶¶ 33-34.  Gossler communicated with opposing counsel on behalf of all defendants, and communicated directly with Steuart regarding the settlement discussions.  See Neeleman Decl. Exs. 31-35.

Following trial, after settlement negotiations were unsuccessful, Global and MMSI appealed the judgment.  Global's appellate counsel[3] filed an affidavit stating that "Global and MMSI were represented separately in the trial court proceedings, and are separately represented on appeal."  Petrak Decl. Ex. I.  The appeal was ultimately unsuccessful and Global satisfied the judgment.

**D.  Pending Motion for Summary Judgment**

Global brings two claims against MPBA[4]: (1) professional negligence for failing to advise Global to raise an advice-of-counsel defense and failing to timely disclose rebuttal damages opinion of expert Neal Beaton; and (2) breach of fiduciary duty by failing to disclose MPBA's conflict of interest.  Amended Complaint, docket no. 38.

---

[3] Global was represented in its appeal by the same firm representing Global in this Court.

[4] At the time Defendant's pending motion was filed, the breach of fiduciary duty claim had not yet been added to the operative pleading, and therefore the pending motion explicitly addressed only the first claim.  Following oral argument, the Court deemed the motion to encompass both claims and allowed both parties an opportunity to file supplemental briefs regarding the fiduciary duty claim.  See Minute Order, docket no. 69.  The Court has considered the supplemental briefs.

1    With regard to the negligence claim, the issue is whether an attorney-client

2    relationship existed between Global and MPBA with respect to the EVYA case.  MPBA

3    argues that no such relationship existed because (1) BMJ knew Gossler represented only

4    MMSI, not Global, and BMJ's knowledge is imputed to Global; and (2) if Steuart

5    subjectively believes that Gossler was Global's attorney, such a belief was unreasonable.

6    Global argues that an attorney-client relationship existed (1) as a matter of law once

7    Gossler agreed to represent Global in the Richard Stabbert case; and (2) because Steuart

8    reasonably believed Gossler was acting as his attorney in the EVYA case.

9    With regard to the fiduciary duty claim, Global alleges that "MPBA's failure to

10   disclose to Global its conflict of interest in representing Global in the related Richard

11   Stabbert litigation constituted a breach of fiduciary duty."  Amended Complaint at ¶ 74.

12   Global argues that MPBA's fiduciary duties, owed to Global as a result of MPBA's

13   representation of Global in the Stabbert case, extended to the EVYA case and required

14   MPBA to intervene in the EVYA case to prevent harm to Global.  Plaintiff's

15   Supplemental Brief, docket no. 71, at 2.

16   **Discussion**

17        **A.  Standard of Review**

18        Summary judgment is appropriate when there is no genuine dispute as to material

19   facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

20   56(a).  The moving party bears the initial burden of demonstrating the absence of a

21   genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A

22   fact is material if it may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc.,

23

ORDER - 8

477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the adverse party

must present "affirmative evidence," which "is to be believed" and from which all

"justifiable inferences" are to be favorably drawn.  Id. at 255, 257.  When the record,

taken as a whole, could not lead a rational trier of fact to find for the non-moving party,

summary judgment is warranted.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986).

### B.  Whether MPBA was Global's Attorney in the EVYA Case

#### 1.  Formation of Attorney-Client Relationship

Generally, determining whether an attorney-client relationship exists is a question

of fact, and summary judgment is proper only if reasonable minds could reach but one

conclusion.  Bohn v. Cody, 119 Wn.2d 357, 363 (1992).  There is no requirement that a

written contract exist; an attorney-client relationship may be implied from the parties'

conduct.  Id.  The existence of the relationship is controlled by the client's subjective

belief that it exists if the client's belief "is reasonably formed based on the attending

circumstances, including the attorney's words or actions."  Id.

#### 2.  Knowledge of BMJ Attorneys

MPBA first argues that Global, through Steuart, could not subjectively believe that

MPBA was its attorney because Global's attorneys at BMJ knew that MPBA was not

acting on behalf of Global, and such knowledge is imputed to Global.  Defendant's

Motion at 16-17.  The Court is not convinced that BMJ's knowledge can be imputed to

the client, especially where, as here, the client had an independent attorney-client

relationship with the attorney.  The existence of an attorney-client relationship is based

1  on the client's subjective belief, not on what the client's other attorneys knew.  The cases

2  cited by MPBA support the general proposition that an attorney's knowledge is imputed

3  to the client, but none of the cases deal with the situation presented here and are therefore

4  distinguishable.  See, e.g. Haller v. Wallis, 89 Wn.2d 539, 547 (1978) (Attorney notified

5  client of hearing and attended hearing on client's behalf, unaware of client's desire to

6  terminate attorney's representation.  The court held that the actions of the attorney were

7  binding on the client.); Hill v. Dep't of Labor & Indus., 90 Wn.2d 276, 279 (1978) (client

8  waived objection, despite lack of personal knowledge of facts supporting it, because

9  attorney was aware of facts; attorney's knowledge was imputed to client).  The Court

10  holds that BMJ's knowledge of MPBA's role is not imputed to Global as a matter of

11  law.[5]

### 3.  Richard Stabbert Representation

13  Global contends that the Court should hold that an attorney-client relationship

14  existed as a matter of law because MPBA agreed to represent Global in the Richard

15  Stabbert case.  Global's position has no merit.  Global essentially argues that once MPBA

16  became Global's attorney in one case, it automatically became Global's attorney in the

17  separate, previously filed EVYA case.  It is true that once MPBA accepted Global as a

18  client, MPBA could not take a position in any case that would be adverse to Global's

19  interests.  However, not being able to take a position adverse to Global in the EVYA case

---

[5] The Court notes that Global's appellate counsel also represented to the Washington Court of Appeals that Global and MMSI were separately represented at trial.  MPBA argues that this is a binding admission on Global.  The Court, in light of its holding herein, need not decide this issue.

1  is different from affirmatively representing Global in the EVYA case.

2      The Rules of Professional Conduct prohibit a lawyer from representing a client if

3  the representation involves a concurrent conflict of interest.  RPC 1.7.  A concurrent

4  conflict of interest exists if the representation of one client will be directly adverse to

5  another client or if there is a significant risk that the representation of one client will be

6  materially limited by the lawyer's responsibilities to another client.  Id.  If a concurrent

7  conflict of interest exists, the lawyer may be able to continue representing both clients if

8  he obtains informed consent from each client.  Id.

9      Here, there was no concurrent conflict of interest because MMSI and Global had

10  no interests that were adverse.  If, in its representation of MMSI in the EVYA case,

11  MPBA found it could or should take a position adverse to Global, a conflict would have

12  been presented.  However, Global agrees that no conflict ever developed because MMSI

13  and Global's interests were aligned throughout all stages of the EVYA case.  See

14  Plaintiff's Opposition, docket no. 43, at 24.  Global's attorney also conceded at oral

15  argument that there was no conflict of interest.  Because no conflict of interest existed,

16  MPBA's representation of Global in the Richard Stabbert case did not require MPBA to

17  represent Global in the separate EVYA case.

18      Global cites Mazon v. Krafchick in support of its position.  In Mazon, the court

19  held that an attorney could not sue his co-counsel for the prospective fee the attorney

20  would have received but for the co-counsel's professional negligence, holding that two

21  attorneys serving as co-counsel had duties only to their client, not to each other.  See

22  Mazon v. Krafchick, 158 Wn. 2d 440, 448 (2006).  In Mazon, there was no dispute that

23

1   the two attorneys were acting as co-counsel and representing the client.  Therefore,

2   Mazon is distinguishable and is not helpful in determining the issue here, which is

3   whether MPBA was representing Global in the EVYA case.

4       Global also asserts that MPBA was required to obtain Global's informed consent

5   if MPBA intended to limit its representation only to the Richard Stabbert case.  Pursuant

6   to RPC 1.2, a "lawyer may limit the scope of the representation if the limitation is

7   reasonable under the circumstances and the client gives informed consent."  Global

8   provides no authority in support of its position, and the Court has found no cases on

9   point.  The comments to RPC 1.2 indicate that a limitation of representation may be

10  appropriate if the client has limited objectives for the representation, or if the client or

11  attorney wish to exclude specific means to accomplish the client's objectives.  See RPC

12  1.2 Comment 6.  The comments provide examples of a lawyer hired by an insurer to

13  represent an insured limiting representation to matters related to insurance coverage, or a

14  lawyer with a client seeking general legal information for an uncomplicated problem

15  limiting representation to a telephone consultation.  RPC 1.2 Comments 6 and 7.

16      Here, Global and MPBA agreed that MPBA would represent Global in the

17  Richard Stabbert case.  There was no limitation of that representation, and MPBA was

18  obligated to fully represent Global in all aspects of that case.  Nothing in the comments or

19  in the RPC support Global's position that MPBA was either required to obtain Global's

20  informed consent to "limit" MPBA's representation to the Richard Stabbert case or

21  MPBA would automatically undertake representation of Global in other pending cases

22  against Global.

23

ORDER - 12

Furthermore, Global provides no authority for the proposition that MPBA's duty in the Richard Stabbert case automatically created a duty to Global in the EVYA case. At the time MPBA undertook representation of Global in the Richard Stabbert case, the EVYA case had already commenced and Global was already represented by BMJ. It is not reasonable to require, as a matter of law, that an attorney who agrees to represent a client in a later case automatically represents the client in a previously filed case, especially when the client is already represented in that case.

Finally, Global argues that an attorney-client relationship must be construed broadly because MPBA engaged in a self-interested transaction. Plaintiff's Response at 20. Global argues that because there was no conflict of interest, Global and MMSI could have been represented by one attorney, and the lawyers chose to maximize their revenues by having two law firms representing defendants in the EVYA case. The only case cited by Global involved an attorney involved in a business transaction with a client and is not on point. In the Matter of the Disciplinary Proceeding Against McGlothlen, 99 Wn. 2d 515 (1983). Here, the record is clear that BMJ recommended separate counsel to resolve a potential conflict of interest. Although no conflict of interest ever developed, that does not make MPBA's involvement self-interested.

The Court holds that an attorney-client relationship was not created as a matter of law between MPBA and Global in the EVYA case.

### 4. Steuart's Subjective Belief

Global finally argues that Steuart reasonably believed that Gossler was acting as Global's attorney. In contrast, MPBA argues that Steuart understood MPBA's role as

1    MMSI's separate counsel and that, even if he did subjectively believe that Gossler was

2    Global's attorney, such a belief was unreasonable under the circumstances.

3        The essence of the attorney-client relationship "is whether the attorney's advice or

4    assistance is sought and received on legal matters," but an attorney-client relationship is

5    not formed "merely because an attorney discusses the subject matter of a transaction."

6    Bohn v. Cody, 119 Wn. 2d 357, 363-364 (1992).  In Bohn, plaintiff Lucille Bohn met

7    with an attorney, George Cody, who was representing Bohn's daughter and son-in-law,

8    the Folletts, in a foreclosure action.  Id. at 359.  Cody told Bohn that he represented the

9    Folletts, and not Bohn, before discussing the situation and agreeing to prepare certain

10   documents that would enable her to pay off the amount due under the contract and

11   receive the deed from the contract vendors.  Id. at 360.  After receiving the deed, Bohn

12   learned that IRS liens encumbered the property and the house was eventually sold by the

13   IRS.  Id. at 361-362.  Bohn sued Cody for negligence, arguing that she believed Cody

14   was acting as her attorney at all times relevant to the case.  Id. at 362.  The court held that

15   Bohn's subjective belief was not reasonable and no attorney-client relationship was

16   formed "[i]n light of Cody's disclaimers of any attorney/client relationship and in light of

17   the Bohns' inability to show that Cody acted inconsistently with these statements."  Id. at

18   364.

19       Similarly here, in his written communications Gossler made clear that he was

20   acting on behalf of MMSI with regard to the EVYA case and on behalf of Global with

21   regard to the Richard Stabbert case, and Global cannot point to any specific evidence to

22   show that Gossler acted inconsistently with those statements.

23

ORDER - 14

1    With regard to the time prior to trial in the EVYA case, Steuart does not provide

2    any evidence that he believed Gossler was representing Global.  Once trial began, Steuart

3    asserts that Gossler would provide him with advice, answer questions, and offer his

4    thoughts on how trial was progressing, but he can point to no specific statements or

5    conversations he had with Gossler.  See, e.g., Steuart Dep. at 232:17-233:10, 234:4-14.

6    Merely discussing the trial with Steuart is not sufficient to create an attorney-client

7    relationship.  See Bohn, 119 Wn. 2d at 364.  Gossler's actions at trial are consistent with

8    his stated role as separate counsel for MMSI.  Furthermore, Steuart's own conduct during

9    trial does not support his asserted belief that Gossler was acting as Global's attorney.

10   Steuart communicated directly and solely with Crane on issues and concerns he had

11   during trial and Steuart did not direct any emails to Gossler, despite Steuart's expressed

12   belief that Gossler was the more experienced attorney.  See Steuart Dep. at 247.

13    Finally, Gossler's post-trial conduct is irrelevant, because the "occurrence of

14   subsequent events has no bearing" on the issue of whether Gossler was acting as Steuart's

15   attorney during trial.  See Bohn, 119 Wn.2d at 364.  In Bohn, the plaintiff attempted to

16   rely on a letter the attorney Cody wrote, seeking reissuance of a deed, as evidence of an

17   attorney-client relationship between Bohn and Cody.  The court noted that the letter was

18   written four weeks after the conversations forming the basis of the Bohns' negligence

19   action and that it gave no indication that Cody was acting as the Bohns' attorney at any

20   prior time.  Id.  The court found the letter had no bearing on the issue, because the court

21   was not concerned with whether Cody was acting as the Bohns' attorney at a later time.

22

23

ORDER - 15

1   Id.  Similarly here, Gossler's role in settlement discussions occurred after trial had

2   concluded and therefore after any alleged negligence had taken place.

3       The Court finds that reasonable minds could reach only the conclusion that MPBA

4   was not acting as counsel for Global in the EVYA case.  MPBA represented MMSI and

5   Perrusquai in the EVYA case, but at no point did Gossler or MPBA undertake

6   representation of Global in that case.  The evidence shows that although Gossler

7   communicated with Steuart regarding the Richard Stabbert case, he did not make any

8   statements indicating that he was representing Global in the EVYA case and, when

9   discussing his work on the EVYA case, Gossler indicated that the work was done on

10  behalf of MMSI.

11      Steuart may have had a "heartfelt feeling" that MPBA was acting as Global's

12  attorneys, Steuart Dep. at 216:19-22, but to establish an attorney-client relationship, the

13  client's subjective belief must be reasonable.  Here, Steuart's belief is not reasonable in

14  light of the evidence indicating that MPBA was not representing Global in the EVYA

15  case, including Steuart's own admissions regarding the actions taken by Gossler prior to

16  and during trial.  The Court finds that MPBA was not Global's attorney in the EVYA

17  case and therefore Global's professional negligence claim must fail.

18      **C.  Breach of Fiduciary Duty Claim**

19      "A fiduciary relationship exists as a matter of law between an attorney and client,

20  and the attorney owes the highest duty of fidelity and good faith to the client."  In re

21  Estate of Carl Larson, 103 Wn. 2d 517, 520 (1985).  It is undisputed that MPBA owed

22  Global fiduciary duties arising out of the Stabbert case.

23

### 1. Failure to Inform of Conflict of Interest

As alleged in the Amended Complaint, Global's breach of fiduciary duty claim is based upon MPBA's failure to inform Global of MPBA's conflict of interest. Global alleges that:

> MPBA would have been required to obtain a waiver of conflict of interest from Global and MMSI before agreeing to represent Global in the Richard Stabbert case, and it failed to do so. MPBA's failure to disclose to Global its conflict of interest in representing Global in the related Richard Stabbert litigation constituted a breach of fiduciary duty.

Amended Complaint at ¶ 74.

Global's claim is premised on the idea that MPBA cannot act as **separate** counsel for MMSI unless MPBA is able to take a position adverse to Global's interests. At oral argument, Global's attorney explained the argument as follows: the EVYA defendants are in a foxhole together, and in order for Gossler to separately represent MMSI, and not Global and Steuart, Gossler had to be free to "stick a bayonet" in Steuart's heart. Gossler could not stick a bayonet into Steuart's and Global's heart, because Global was a client of MPBA, so MPBA must have had a conflict of interest and the failure to disclose the conflict is a breach of fiduciary duty. The Court finds this argument totally without merit.[6]

_____

[6] Global's foxhole analogy is frivolous on its face. Global would have any attorneys who present a joint defense (while representing different defendants) becoming the attorney for the other parties. The Court considers the "stick the bayonet in the heart" statement to be completely beyond the pale. In the words of John P. Curran, "When I can't talk sense, I talk metaphor." John P. Curran, 2 Thomas Moore, *Memoirs* 170 (1853).

The parties have all agreed that MMSI and Global's interests were fully aligned and no conflict existed. Specifically, Global agrees that "there was no conflict of interest between MMSI and Global since Global was fully and completely indemnifying MMSI. And no conflict of interest between those entities ever developed in the case." Plaintiff's Response at 24. If no conflict existed or ever developed, MPBA had no duty to disclose a conflict of interest, and therefore no duty could have been breached.

Two co-defendants can be separately represented in the absence of a conflict of interest. Defendants may choose to obtain separate representation for a variety of reasons, and the fact that the defendants' interests are aligned does not mean that each defendant's attorney automatically represents both defendants. Global's breach of fiduciary duty claim, as alleged in the Amended Complaint, must fail.

### 2.   Duties Extending from the Richard Stabbert Case

In opposing summary judgment, Global articulates the fiduciary duty claim slightly differently.[7] See Plaintiff's supplemental brief, docket no. 71. Rather than focusing on a conflict of interest, Global argues that MPBA owed Global fiduciary duties, arising from the Richard Stabbert case, and that those duties extended beyond the scope of the Richard Stabbert case and required MPBA to "intervene"[8] in the EVYA case. Id. at 2.

---

[7] Global did not move to amend its complaint to allege the new theory on the breach of fiduciary duty claim. The Court nevertheless addresses the arguments raised by Global in its supplemental brief.

[8] Global uses the term "intervene" not in the legal sense of intervening as a party to a lawsuit, but rather in the sense of stepping in to the EVYA case and providing counsel to protect Global's interests in the litigation.

ORDER - 18

1     In support of its position, Global cites In re JTS Corp., 305 B.R. 529, 552 (Bankr.

2     N.D. Cal. 2003).  In JTS, the defendant attorney was hired to finalize a real property

3     transaction and draft a sales contract reflecting the terms of the deal.  Id. at 551.  The

4     attorney was aware that the client was about to sell the property for $5 - $6 million less

5     than appraised value.  Id. at 552.  The court rejected the attorney's argument that her

6     representation of the client was limited only to drafting the agreement.  Id. at 551.  The

7     court held that the potential harm to the client was reasonably apparent and that the

8     attorney had a duty to inform the client of the possible need for further legal advice.  Id.

9          The JTS case stands for the unremarkable proposition that an attorney who is

10    representing a client in a case should inform the client of possible legal issues in the case

11    that are reasonably apparent to the attorney.  The court in JTS did not find that the

12    attorney's duties extended to a separate case, but rather simply held that the attorney had

13    a duty to inform the client of issues in the very case in which the attorney was

14    representing the client.[9]  Here, Global points to no legal issues that MPBA failed to

15    address in the Richard Stabbert case.  In fact, it is undisputed that MPBA fully

16    represented Global in the Richard Stabbert case, and ultimately was able to have the

17    claims against Global dismissed in that case.  The JTS case does not stand for the

18    proposition that MPBA's duties to Global extended to the EVYA case.

19    ────────────────

20    [9] Many of the cases cited by Global are similar in nature to JTS.  See, e.g. Daugherty v. Runner,
      581 S.W.2d 12, 14 (Ky. Ct. App. 1978) (attorney, hired to "institute a claim for damages against

21    any and all responsible parties as a result of injuries received" in an automobile accident, found
      liable for failing to advise client of potential medical malpractice claim); Janik v. Rudy, Exelrod

22    & Zieff, 119 Cal. App. 4th 930, 934 (2004) (reversing dismissal of complaint, holding that class
      counsel had a duty to class members to raise an alternative theory of recovery).

23

1  It is true that an attorney's fiduciary duties may extend beyond the boundaries of a

2  particular case.  For example, RPC 1.7 prohibits an attorney from representing a client if

3  the representation involves a concurrent conflict of interest.  Furthermore, RPC 1.9

4  prohibits an attorney from representing a client if that client's interests are materially

5  adverse to the interests of a former client, absent informed consent.  RPC 1.9 also

6  prohibits an attorney from later revealing information relating to representation of a

7  client, or using information relating to a former client to the disadvantage of that client.

8  These rules all indicate that a lawyer has a fiduciary duty of loyalty and confidentiality,

9  which is not bounded by the scope of the representation.  These fiduciary duties prohibit

10  MPBA from taking a position adverse to Global, or revealing information it learned about

11  Global.  However, none of the ethical rules or cases cited by Global support the

12  proposition that, as a result of its representation of Global in the Richard Stabbert case,

13  MPBA had a duty to provide counsel in the EVYA case.

14  The Court holds that because there was no conflict of interest, MPBA did not

15  breach any fiduciary duties owed to Global by failing to disclose a conflict of interest.

16  Furthermore, the Court holds that MPBA's fiduciary duties, owed to Global in the

17  Stabbert case, did not create a duty to provide counsel in the EVYA case.  Global's

18  breach of fiduciary duty claim fails as a matter of law.

19  **Conclusion**

20  For the foregoing reasons, the Court GRANTS Defendant's motion for summary

21  judgment, docket no. 31, and DISMISSES Plaintiff's claims.  The Court STRIKES as

22  moot Plaintiff's motion for partial summary judgment, docket no. 57, and Defendant's

23

ORDER - 20

motion for partial summary judgment, docket no. 59.  The Clerk is DIRECTED to enter

judgment in accordance with this Order and to close this case.

IT IS SO ORDERED.

DATED this 15th day of September, 2014.

THOMAS S. ZILLY
United States District Judge

ORDER - 21